1

2

3

4

5

6

7

8
                    UNITED STATES DISTRICT COURT
                   WESTERN DISTRICT OF WASHINGTON
9                             AT TACOMA

10

11   KAREN L. REED and MICHAEL F.          CASE NO. C19-5182 RJB
     REED,
                                           ORDER GRANTING MOTIONS
12                        Plaintiff,       FOR SUMMARY JUDGMENT

13         v.

14   CITY OF VANCOUVER,
     WASHINGTON, et al.
15
                          Defendant.
16

17          This matter comes before the Court on Defendant Eric Holmes's Motion for Summary

18   Judgment (Dkt. 32), Defendant Bronson Potter's Motion for Summary Judgment (Dkt. 36), and

19   Defendant Jonathan Young's Motion for Summary Judgment (Dkt. 44). The motions for

20   summary judgment and materials filed in support of and in opposition thereto are similar and

21   frequently identical.[1] The Court has considered the motions, materials filed in support of and in

22

23   _____
     [1] The file is replete with duplicative briefings and records. To simplify citations, this order generally refrains from
24   string citations and refers primarily to the instant motions, responses, and replies, each of which frequently cite to
     various other records and declarations for factual support, which the Court has reviewed.

opposition thereto, and the remaining record herein. For the reasons set forth below, the instant

motions for summary judgment should be granted.

## I.    RELEVANT FACTS AND PROCEDURAL HISTORY

### A.  FACTS

Plaintiff Karen Reed ("Ms. Reed") makes four claims against Defendants Eric Holmes

(Mr. Holmes), Bronson Potter ("Mr. Potter"), and Jonathan Young ("Mr. Young"): fraud in the

inducement, intentional interference with business relationship, outrage, and intentional infliction

of emotional distress. Dkt. 7, at 10–13. Plaintiff Michael Reed ("Mr. Reed"), Ms. Reed's spouse,

claims loss of consortium against Mr. Holmes, Mr. Potter, and Mr. Young. Dkt. 7, at 13–14.

Ms. Reed alleges that she is a disabled employee whose disability was not effectively

accommodated by her employer, Defendant City of Vancouver ("City"). Ms. Reed has chronic

back, hip, and leg pain apparently related to spinal surgeries. Dkt. 7, at 3. Mr. Holmes has been

the City Manager for the City of Vancouver since 2010. Dkt. 60, at 4. Mr. Potter was the City

Attorney for the City from August 2014 to 2019 (now retired). Dkts. 36, at 4; and 37, at 4. In

2015, Mr. Young was the Chief Assistant City Attorney for the City (now the City Attorney).

Dkts. 44, at 4; and 45, at 4.

In the fall of 2015, Ms. Reed applied for a position as Assistant City Attorney III with the

City. Dkt. 58. Mr. Young was part of a team that interviewed applicants, including Ms. Reed.

Dkt. 44, at 4. Mr. Potter apparently wanted to hire Ms. Reed to help work on an upcoming

EFSEC (Energy Facility Site Evaluation Council) hearing. Dkt. 60, at 5. On January 13, 2016,

Mr. Young and Mr. Potter called Ms. Reed to offer her an assistant city attorney position. Dkt.

44, at 4. During the phone call, Ms. Reed requested a disability accommodation allowing her to

telecommute 50% of the time. Dkt. 58, at 4. Mr. Young and Mr. Potter did not approve or deny

her request and explained that there was an accommodation process in place at the City. Dkt. 60, at 4. Ms. Reed was informed that she should work with Debby Watts ("Ms. Watts") in Human Resources ("HR") to process her request. Dkt. 60, at 4.

Ms. Reed applied for accommodations though HR and enclosed a letter from her doctor recommending that she be allowed to work from home 50% of the time, change positions, and take rest breaks every hour for five minutes. Dkt. 60, at 4–5. Ms. Watts apparently shared the accommodation and application materials with Mr. Young and Mr. Potter. Dkt. 60, at 5.

Before the accommodation request was processed, Ms. Reed requested a written offer from the City. Dkt. 32, at 4. On January 20, 2016, Ms. Reed received a letter of offer from the City signed by Mr. Holmes. Dkts. 60, at 6; and 61-4. The letter indicated a tentative start date of February 16, 2016, and provided that "[t]his offer of employment is contingent on … confirmation that you are able to perform the essential duties of the job with or without reasonable accommodation." Dkt. 61-4, at 2.

Ms. Reed's resume, submitted with her application, indicated that she was employed by Ring Bender. Dkt. 60, at 5. After receiving the letter of offer, Ms. Reed gave notice and terminated her employment with Ring Bender. Dkt. 60, at 6. Ms. Reed alleges that, "[h]ad she been told that a 50% telecommute accommodation was not possible at any time before she resigned from Ring Bender, she would have terminated discussions about a position with the City and stayed at Ring Bender." Dkt. 60, at 6. Ms. Reed indicated at deposition that she had terminated negotiations for another position with a different employer when it became clear that telecommuting would not be possible. Dkt. 60, at 6.

On February 22, 2016, Mr. Young sent Ms. Reed an email detailing the accommodations offered. Dkt. 61-16, at 3–4. The email provided to Ms. Reed the following accommodations:

- Your choice of workstations types (standard desk, standup work station, treadmill).

- The ability to use of [*sic*] your own prescribed chair in the office.

- The ability to change physical positions and have reasonable intermittent breaks throughout the day.

- We are not able to provide you with telecommuting 50% of the time because of the need to be in the office to meet with clients and the request related to some degree to the distance of your commute. However, if there is travel needed during work hours, such as the upcoming EFSEC Oil Terminal hearing in Olympia, the city will be flexible on providing you with reasonable additional time for travel. Additionally, we acknowledge the cumulative effects the amount of driving may have on you and are able to offer you the option of one of the following work schedules:

  - A traditional 5-8 work schedule,

  - A 9/80 work schedule, or

  - A 4-10 work schedule.

  In the event that you select the 9/80 or 4/10 schedule, you may adjust your flex day forward or backward up to 3 working days from your usual flex day. The City Attorney may approve moving a flex day forward or backward more than 3 days. (Also, following our conversation with Debby Watts, you telephoned back and asked if you select one of the three schedules above and find that it is too physically taxing, if we can allow you to switch to one of the other schedules listed above. Confirming my response – yes, this is fine.)

  Please think over the options above and let me know your decision.

Dkt. 61-16, at 3–4.

Ms. Reed apparently responded indicating her schedule preference and requesting to start as soon as possible. Dkt. 61-16, at 2. Ms. Reed "accepted the limited accommodations offered by the City and started her position at the City on February 24, 2016, hoping that she would be able to manage her pain." Dkt. 60, at 6. Despite the February 22, 2016 email denying her

ORDER GRANTING MOTIONS FOR SUMMARY JUDGMENT - 4

1    telecommuting request, Ms. Reed contends that she "first learned that the City believed that the

2    essential functions of my position would not allow me to work from home when I received a

3    letter from Debby Watts on March 8, 2017." Dkt. 62, at 2, ¶ 7.

4        Ms. Reed began working with Mr. Potter on preparations for the EFSEC hearing shortly

5    after beginning her employment with the City. Dkt. 44, at 10. Within approximately three weeks

6    of starting at the City, Ms. Reed apparently experienced a high increase in her pain level and

7    uncontrollable muscle spasms. Dkt. 60, at 6–7. Ms. Reed alleges that, because of the City's

8    refusal to grant her a 50% telecommute accommodation, she suffered severely. Dkt. 62, at 2–3.

9    Additionally, Ms. Reed allegedly told Mr. Young that she would need paralegal support at the

10    EFSEC hearing, in part to help with physical tasks. Dkt. 58, at 7. When Ms. Reed was not given

11    paralegal support, she informed Mr. Young that her husband, Mr. Reed, would have to go with

12    her to Olympia to help her with physical tasks. Dkt. 58, at 7.

13        Mr. Potter apparently found Ms. Reed's work deficient. Dkt. 44, at 10–11. On September

14    9, 2016, Ms. Reed, Mr. Young, and Mr. Potter held a meeting to discuss Ms. Reed's performance

15    and probationary employment, criticizing her performance and work for the EFSEC project. Dkt.

16    58, at 8. Ms. Reed was informed that Mr. Young and Mr. Potter would be meeting with HR as to

17    her performance. Dkt. 58, at 21.

18        On October 14, 2016, Mr. Potter and Mr. Young met with HR and implemented a

19    Performance Improvement Plan ("PIP") (Dkt. 61-22) for Ms. Reed. Dkt. 44, at 12. Ms. Reed

20    provides that she was so concerned about her work performance that she tried to reduce her

21    medications while at work and, on October 3, 2016, submitted a revised medication disclosure

22    form. Dkt. 58 at 8–9. When the reduced medication caused an increase in Ms. Reed's symptoms,

23

24

1    she informed Mr. Young that she was again taking her prior medication dosages at work. Dkt.

2    58, at 8–9.

3        Mr. Young advised Ms. Reed that he intended to present her with a PIP and scheduled a

4    time to meet with her and HR on October 21, 2016. Dkt. 44, at 12. Ms. Reed apparently did not

5    meet with Mr. Young and HR as planned. Dkt. 44, at 12. On October 19, 2016, Ms. Reed's

6    doctor determined that she needed a medical leave of up to six months due to the severe and

7    rapid deterioration of her health while working at the City without a telecommuting

8    accommodation. Dkts. 58, at 9; and 66, at 4, ¶ 10.

9        On October 20, 2016, Ms. Reed submitted from her doctor a request for a six-month full-

10   time leave of absence for medical reasons. Dkts. 44, at 12–13; and 58, at 9. Ms. Reed's doctor

11   apparently never released Ms. Reed to return to work. Dkt. 44, at 13. Defendants provide that,

12   "[a]s a result, in July 2017, eight months after she started her medical leave, the City determined

13   that her request for an indefinite leave of absence was not a reasonable accommodation and her

14   employment was terminated." Dkt. 44, at 13. Ms. Reed apparently remains unable to work and

15   receives Social Security disability benefits. Dkt. 58, at 3.

16   **B. PROCEDURAL HISTORY**

17        Ms. Reed filed a complaint in this case on March 8, 2019. Dkt. 1. An amended operative

18   complaint was filed on March 29, 2019. Dkt. 7. On May 14, 2020, Mr. Holmes filed a Motion

19   for Summary Judgment requesting dismissal of all of Plaintiffs' claims against him. Dkt. 32.

20   Plaintiffs filed a response. Dkt. 60. Mr. Holmes filed a reply. Dkt. 70.

21        Mr. Potter filed a Motion for Summary Judgment requesting dismissal of all of Plaintiffs'

22   claims against him. Dkt. 36. Plaintiffs filed a response. Dkt. 59. Mr. Potter filed a reply. Dkt. 71.

23

24

1    Mr. Young filed a Motion for Summary Judgment requesting dismissal of all of

2 Plaintiffs' claims against him. Dkt. 44. Plaintiffs filed a response. Dkt. 58. Mr. Young filed a

3 reply. Dkt. 72.

4    The instant motions for summary judgment were renoted for July 3, 2020. Dkt. 57.

5  **C. ORGANIZATION OF OPINION**

6    Below, the pending motions are discussed together. This order first discusses summary

7 judgment standards. Second, the application of state law. Third, Ms. Reed's fraud in the

8 inducement claim. Fourth, Ms. Reed's intentional interference with a business relationship claim.

9 Fifth, Ms. Reed's outrage claim. Sixth, Ms. Reed's intentional infliction of emotional distress

10 claim. Finally, Mr. Reed's loss of consortium claim.

11                      **II.   DISCUSSION**

12 **A. SUMMARY JUDGMENT STANDARD**

13    Summary judgment is proper only if the pleadings, the discovery and disclosure materials

14 on file, and any affidavits show that there is no genuine issue as to any material fact and that the

15 movant is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(c). The moving party is

16 entitled to judgment as a matter of law when the nonmoving party fails to make a sufficient

17 showing on an essential element of a claim in the case on which the nonmoving party has the

18 burden of proof. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1985). There is no genuine issue of

19 fact for trial where the record, taken as a whole, could not lead a rational trier of fact to find for

20 the nonmoving party. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586

21 (1986) (nonmoving party must present specific, significant probative evidence, not simply "some

22 metaphysical doubt."). *See also* Fed. R. Civ. P. 56(d). Conversely, a genuine dispute over a

23 material fact exists if there is sufficient evidence supporting the claimed factual dispute,

24

1    requiring a judge or jury to resolve the differing versions of the truth. *Anderson v. Liberty Lobby,*

2    *Inc.*, 477 U.S. 242, 253 (1986); *T.W. Elec. Service Inc. v. Pacific Electrical Contractors*

3    *Association*, 809 F.2d 626, 630 (9th Cir. 1987).

4           A determination of the existence of a material fact is often a close question. The court

5    must consider the substantive evidentiary burden that the nonmoving party must meet at trial –

6    e.g., a preponderance of the evidence in most civil cases. *Anderson*, 477 U.S. at 254, T.W. *Elect.*

7    *Service Inc.*, 809 F.2d at 630. The court must resolve any factual issues of controversy in favor

8    of the nonmoving party only when the facts specifically attested by that party contradict facts

9    specifically attested by the moving party. The nonmoving party may not merely state that it will

10   discredit the moving party's evidence at trial, in the hopes that evidence can be developed at trial

11   to support the claim. *T.W. Elect. Service Inc.*, 809 F.2d at 630 (relying on *Anderson, supra*).

12   Conclusory, non-specific statements in affidavits are not sufficient, and "missing facts" will not

13   be "presumed." *Lujan v. National Wildlife Federation*, 497 U.S. 871, 888–89 (1990).

14   **B.  WASHINGTON STATE SUBSTANTIVE LAW APPLIES**

15          Under the rule of *Erie R.R. Co. v. Tompkins*, 304 U.S. 64 (1938), federal courts sitting in

16   diversity jurisdiction apply state substantive law and federal procedural law to state law claims.

17   *Gasperini v. Center for Humanities, Inc.*, 518 U.S. 415, 427 (1996).

18   **C.  FRAUD IN THE INDUCEMENT CLAIM**

19          Under Washington law, the nine elements of a fraud claim are as follows: (1)

20   representation of an existing fact; (2) materiality; (3) falsity; (4) the speaker's knowledge of its

21   falsity; (5) intent of the speaker that it should be acted upon by the plaintiff; (6) plaintiff's

22   ignorance of its falsity; (7) plaintiff's reliance on the truth of the representation; (8) plaintiff's

23

24

right to rely upon it; and (9) damages suffered by the plaintiff. *Adams v. King Cty.,* 164 Wn.2d 640, 662 (2008) (citing *Stiley v. Block*, 130 Wn.2d 486, 505 (1996)).

"A claim of fraudulent inducement requires proof of all nine elements of fraud." *JZK, Inc. v. Coverdale*, 192 Wn. App. 1022, at *11 (2016) (citing *Petersen v. Turnbull*, 68 Wn.2d 231, 235 (1966); *Webster v. L. Romano Eng'g Corp.*, 178 Wash. 118, 120–21 (1934)). "A party claiming the elements of fraud must prove each of the nine elements … by clear, cogent, and convincing evidence*." JZK, Inc.,* 192 Wn. App. 1022, at *11 (citing *Kirkham v. Smith*, 106 Wn. App. 177, 183 (2001)).

The statute of limitations for fraud and fraudulent inducement is three years; the cause of action is not deemed to have accrued until the discovery by the aggrieved party of the facts constituting the fraud. RCW 4.16.080(4); *see also Putzier v. Ace Hardware Corp.,* 50 F. Supp. 3d 964, 980 (N.D. Ill. 2014) ("Under Washington law, [plaintiffs] must have commenced their fraud and fraudulent inducement actions within three years of the alleged fraud."). Actual discovery is not required if the party could have discovered the fraud with due diligence. *Hudson v. Condon*, 101 Wn. App. 866, 875 (2000). Courts "infer actual knowledge of fraud if the aggrieved party, through due diligence, could have discovered it …. The plaintiff need not be aware of the full extent of the damages; knowledge of some actual, appreciable damage is sufficient to begin the running of the statute of limitations." *Id.* (citing *First Maryland Leasecorp v. Rothstein*, 72 Wn. App. 278, 283 (1993); *Green v. A.P.C. (American Pharm. Co.),* 136 Wn.2d 87, 96–97 (1998); *Zaleck v. Everett Clinic*, 60 Wn. App. 107, 112 (1991)). "While the determination of when a plaintiff suffered actual damage is a question of fact, the issue can be decided as a matter of law if reasonable minds could reach but one conclusion." *Hudson*, 101 Wn. App. at 875.

Ms. Reed claims that the defendants did not tell her that she would not be able to telecommute 50% of the time prior to the time that she resigned from Ring Bender, an omission of information constituting a fraud. Plaintiffs contend that "[t]he information that a 50% telecommute was not possible was withheld … to induce Ms. Reed to resign from her prior position and work for the City[.]" Dkt. 58, at 15. Ms. Reed further contends that she "first learned that the City believed that the essential functions of my position would not allow me to work from home when I received a letter from Debby Watts on March 8, 2017" (Dkt. 62, at 2, ¶ 7). However, Ms. Reed does not deny receiving the February 22, 2016 email rejecting her 50% telecommute request (see Dkt. 7, at 3–4, ¶ 18) and she does not explain (nor provide supporting legal authority) how the February 22, 2016 email did not alert her to the alleged omission of information that she would not be allowed an accommodation to telecommute 50% of the time. The February 22, 2016 email clearly and unequivocally informed Ms. Reed that she would not be given a 50% telecommuting accommodation. *See* Dkt. 61-16, at 3 ("We are not able to provide you with telecommuting 50% of the time because of the need to be in the office to meet with clients and the request related to some degree to the distance of your commute."). To the extent that the defendants' conduct constituted any fraud, Ms. Reed's claim accrued on February 22, 2016, when she received an email informing her that her 50% telecommute accommodation request was denied.

Ms. Reed's fraud in the inducement claim accrued on February 22, 2016; she thus needed to assert the claim no later than February 22, 2019. Ms. Reed did not file her fraud in the inducement claim until March 8, 2019. Therefore, Ms. Reed's fraud in the inducement claim against Mr. Holmes, Mr. Potter, and Mr. Young is time-barred and should be dismissed.

1

2

The instant motions for summary judgment argue that Ms. Reed's fraud in inducement claim should be dismissed even if it were timely filed. The Court need not consider that issue.

3

## D. INTENTIONAL INTERFERENCE WITH BUSINESS RELATIONSHIP CLAIM

4

Under Washington law,

5

6

7

8

> [t]o prove tortious interference, the plaintiff must produce evidence sufficient to support all the following findings: (1) the existence of a valid contractual relationship or business expectancy; (2) the defendant's knowledge of and intentional interference with that relationship or expectancy; (3) a breach or termination of that relationship or expectancy induced or caused by the interference; (4) an improper purpose or the use of improper means by the defendant that caused the interference; and (5) resultant damage.

9

*Tamosaitis v. Bechtel Nat., Inc.,* 182 Wn. App. 241, 248 (2014) (quotation omitted).

10

11

12

13

14

15

16

17

The statute of limitations on a tort claim of intentional interference with a business expectancy is three years. RCW 4.16.080(2) (establishing the limitations period for common law torts not specifically enumerated in other limitations sections); *City of Seattle v. Blume*, 134 Wn.2d 243, 251 (1997) (citing *Calbom v. Knudtzon*, 65 Wn.2d 157, 161 (1964)). The statute of limitations does not begin to run until the cause of action has accrued. RCW 4.16.005. "As a general principle, a statutory limitation period commences and a cause of action accrues when a party has the right to seek relief in the courts." *First Maryland Leasecorp v. Rothstein*, 72 Wn. App. 278, 282 (1993).

18

19

20

21

22

23

24

Ms. Reed argues that the defendants "had a duty as part of the good faith negotiations regarding Ms. Reed's hiring to disclose to her that a 50% telecommute accommodation was not possible because of the essential functions of her job." Dkt. 58, at 16. Similar to the argument above in § II(C), Ms. Reed contends that her intentional interference with a business relationship claim did not accrue until March 8, 2017, when she received a letter from Ms. Watts. Dkt. 60, at 14–15. The Court disagrees.

To the extent that defendants failed to disclose to Ms. Reed that her 50% telecommute accommodation was not possible because of the essential functions of her job, Ms. Reed's claim accrued on February 22, 2016, when Ms. Reed received the email denying her accommodation request. Ms. Reed thus needed to assert her intentional interference with a business relationship claim no later than February 22, 2019. Ms. Reed did not file her intentional interference with a business relationship claim until March 8, 2019. Therefore, Ms. Reed's intentional interference with a business relationship claim against Mr. Holmes, Mr. Potter, and Mr. Young is time-barred and should be dismissed.

The instant motions for summary judgment argue that Ms. Reed's intentional interference with a business relationship claim should be dismissed even if it were timely filed. The Court need not consider that issue.

## E. OUTRAGE CLAIM

The elements of outrage are "(1) extreme and outrageous conduct; (2) intentional or reckless infliction of emotional distress; and (3) severe emotional distress on the part of the plaintiff." *Reid v. Pierce County*, 136 Wn.2d 195, 202, 961 P.2d 333 (1998). Outrageous and extreme conduct is conduct that is "so outrageous in character, and so extreme in degree, as to go beyond all possible bounds of decency, and to be regarded as atrocious, and utterly intolerable in a civilized community." *Grimsby v. Samson*, 85 Wn.2d 52, 59 (1975) (internal citation omitted). A "recitation of the facts to an average member of the community would arouse his resentment against the actor and lead him to exclaim 'Outrageous!'" *Reid*, 136 Wn.2d at 201–02. The tort of outrage "'does not extend to mere insults, indignities, threats, annoyances, petty oppressions, or other trivialities.' In this area plaintiffs must necessarily be hardened to a certain degree of rough language, unkindness and lack of consideration." *Grimsby*, 85 Wn.2d at 59 (quoting Restatement (Second) of Torts § 46, cmt. *d*).

1  Ms. Reed has not alleged nor shown conduct that would establish an outrage claim.

2  Therefore, Ms. Reed's outrage claim against Mr. Holmes, Mr. Potter, and Mr. Young should be

3  dismissed.

4  **F.  INTENTIONAL INFLICTION OF EMOTIONAL DISTRESS**

5  "A plaintiff may recover for negligent infliction of emotional distress if she proves duty,

6  breach, proximate cause, damage, and 'objective symptomatology.'" *Kumar v. Gate Gourmet*

7  *Inc.,* 180 Wn.2d 481, 505 (2014) (quoting *Strong v. Terrell*, 147 Wn. App. 376, 387 (2008).

8  Washington courts have "recognized that actions based on mental distress must be subject to

9  limitation by the courts, and [they] ha[ve] concluded that the proper limitation is a balance of

10  risk against utility." *Kumar,* 180 Wn.2d at 505. A "defendant's obligation to refrain from

11  particular conduct is owed only to those who are *foreseeably* endangered by the conduct and

12  only with respect to those risks or hazards whose likelihood made the conduct unreasonably

13  dangerous." *Strong v. Terrell*, 147 Wn. App. 376, 387–88, 195 P.3d 977 (2008) (emphasis in

14  original) (citation and quotation omitted). "Conduct is unreasonably dangerous when its risks

15  outweigh its utility." *Id*. (citations omitted). Additionally, "a plaintiff's emotional response must

16  be reasonable under the circumstances." *Hegel v. McMahon*, 136 Wn.2d 122, 132 (1998) (citing

17  *Hunsley v. Giard*, 87 Wn.2d 424, 436 (1976)).

18  Ms. Reed has not alleged nor shown conduct by defendants with risks and hazards whose

19  likelihood made the conduct unreasonably dangerous. Ms. Reed has not shown that defendants

20  were aware of or intended any conduct that was foreseeably unreasonably dangerous. Even

21  viewing all facts in Ms. Reed's favor, Ms. Reed has not shown that the risk of Defendants'

22  conduct far outweighed its utility. Therefore, Ms. Reed's intentional infliction of emotional

23  distress claim against Mr. Holmes, Mr. Potter, and Mr. Young should be dismissed.

24

**G.  LOSS OF CONSORTIUM CLAIM**

"Damages for loss of consortium are proper when a spouse suffers loss of love, society, care, services, and assistance due to a tort committed against the impaired spouse." *Burchfiel v. Boeing Corp.*, 149 Wn. App. 468, 494 (2009). "[T]here can be no claim for loss of consortium if no legal wrong has been committed against the impaired spouse." *Francom v. Costco Wholesale Corp.,* 98 Wn. App. 845, 870 (2000) (citing *Conradt v. Four Star Promotions, Inc.,* 45 Wn. App. 847, 853 (1986)).

Ms. Reed has not established any of her claims against Mr. Holmes, Mr. Potter, and Mr. Young; therefore, Mr. Reed's loss of consortium claim should be dismissed.

### III.   ORDER

Therefore, it is hereby **ORDERED** that:

- Defendant Eric Holmes's Motion for Summary Judgment (Dkt. 32) is **GRANTED**;

- Defendant Bronson Potter's Motion for Summary Judgment (Dkt. 36) is **GRANTED**;

-  Defendant Jonathan Young's Motion for Summary Judgment (Dkt. 44) is **GRANTED**;

- All claims against Defendants Eric Holmes, Bronson Potter, and Jonathan Young are **DISMISSED;** and

- Plaintiffs' claims against Defendant City of Vancouver may proceed.

The Clerk is directed to send uncertified copies of this Order to all counsel of record and to any party appearing pro se at said party's last known address.

Dated this 13th day of July, 2020.

ROBERT J. BRYAN
United States District Judge