UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT TACOMA

| | |
|---|---|
| KAREN L. REED and MICHAEL F. REED, | CASE NO. 3:19-cv-5182-RJB |
| Plaintiffs, | ORDER GRANTING, IN PART, DEFENDANT'S MOTION FOR SUMMARY JUDGMENT AND DENYING PLAINTIFFS' MOTION FOR SUMMARY JUDGMENT |
| v. | |
| CITY OF VANCOUVER, a municipal corporation, | |
| Defendant. | |

This matter comes before the Court on Defendant's Motion for Summary Judgment (Dkt. 74) and Plaintiffs' Motion for Partial Summary Judgment on Liability for Claims 1, 4, and 10 (Dkt. 84). Though Plaintiffs bring eleven causes of action, the dispute essentially revolves around how the Defendant, Ms. Reed's former employer, treated her and whether it reasonably accommodated her preexisting disability.

The Court has considered the pleadings filed in support of and in opposition to both motions and the file herein. Oral argument is unnecessary.

1

### I.     RELEVANT FACTS AND PROCEDURAL HISTORY

2

**A. FACTS**

3         Plaintiff Karen L. Reed worked as an attorney for the Defendant, City of Vancouver ("the

4    City"), from February 16, 2016 until effectively October 20, 2016 when she went on full-time

5    medical leave.  Dkts. 74 and 84.  The City officially terminated Ms. Reed in June 2017 when she

6    confirmed that her leave would be indefinite.  *Id.*  Ms. Reed worked at a private law firm before

7    joining the City.  *Id.*

8         The Parties do not dispute that Ms. Reed is disabled due to chronic, preexisting pain.  *Id.*

9    Nor do they dispute that she had ongoing discussions with the Human Resources department

10   ("HR") about disability accommodation while negotiating for the position, that she requested to

11   work from home 50% of the time, that her doctor recommended that she work from home 50%

12   of the time to allow her to change position and take breaks.  Notably, the City denied her request

13   and offered her an alternative, which she accepted.  *Id.*  The City asserts that, based on the

14   recommendation of Ms. Reed's doctor, it believed Ms. Reed's disability ultimately required that

15   she be able to change positions and take breaks during the day to manage her pain.  Dkt. 74 at 5–

16   6.  Accordingly, the City offered to let her work four ten-hour days per week at the office,

17   change her workstation set-up, and take periodic breaks; it argues that was a reasonable balance

18   of accommodating her needs with the essential functions of her position, which included face-to-

19   face interaction.  *Id.*

20        Despite that accommodation, Ms. Reed's pain increased significantly after beginning

21   with the City.  Dkt. 84 at 6.  The Parties agree that Ms. Reed began informing her supervisor in

22   March 2016 about her increasing pain and that it caused her to increase her medication doses.

23   *Id.*; Dkt. 87-1 at 32.  Ms. Reed continued to raise the issue of her pain on a weekly basis, "give or

24

take," during her employment.  *Id.*

Ms. Reed's first major project was to prepare for a five-week long Energy Facility Site Evaluation Council ("EFSEC") hearing that would take place in Olympia, Washington in August 2016.  Dkts. 74 and 84.  Before the hearing, Ms. Reed requested that a paralegal go with her, but the City only provided one for days when she needed assistance with exhibits.  *Id.*  According to Ms. Reed this is an example of the City's failure to accommodate the needs of her disability (Dkt. 105), but according to the City, Ms. Reed only indicated she needed assistance to manage exhibits, not for disability-related physical support (Dkt. 103 at 6).

The EFSEC hearing was physically taxing on Ms. Reed.  As the City points out, Ms. Reed's doctor, Howard Grattan, M.D., testified that he did not think she would be able to be in a hearing five days a week because it would not allow her to engage in position changes and stretching and would exacerbate her pain.  Dkts. 74 at 2 and 75-1 at 3.  Toward the end of the hearing, Ms. Reed informed the City she would need to limit her workload to 40 hours per week to protect her health.  Dkt. 84 at 7.  A few days later, her supervisor assigned her to draft the entire closing EFSEC brief, as opposed to just the one portion she expected to draft.  *Id.* at 8.  According to Ms. Reed, the extra briefing required her to work additional hours.  *Id.*  The City claims it did not know she would need to work more than 40 hours to complete it.  Dkt. 103 at 6.  Nonetheless, the Parties agree that Ms. Reed's hours went back down to 40 per week after submitting the brief.  Dkt. 84 at 7.

Also notable to this dispute, Ms. Reed had well-documented performance deficiencies, which began before the EFSEC hearing, and continued throughout her employment.  Dkts. 74 at 8 and 50 at 2.  Ms. Reed acknowledges that the feedback was valid.  *Id.*  In October 2016, Ms. Reed's supervisors implemented a Performance Improvement Plan ("PIP").  Dkt. 74 at 9.  The

1   PIP went into effect on October 16, 2016 and Ms. Reed had a meeting scheduled with her

2   supervisors and HR to discuss it on October 21.  *Id.*  On October 20, Ms. Reed submitted a

3   request from her doctor for a full-time medical leave of absence.  *Id.*  The City extended Ms.

4   Reed's medical leave until June 2017, when the City terminated Ms. Reed after she and her

5   doctor confirmed that her leave would be indefinite.  *Id.* at 74.

6       Ms. Reed suffers ongoing health problems and requires assistance from her husband and

7   co-plaintiff, Michael Reed.  Dkt. 84 at 9.  Ms. Reed remains unable to work.  *Id.*

8   **B. PENDING MOTIONS**

9       Both Parties move for summary judgment.  Defendant moves for summary judgment

10  dismissal of all of Plaintiffs' claims, which are as follows:

11      1.  Failure to accommodate under the Americans with Disabilities Act ("ADA"), 41
            U.S.C. § 12112;
12      2.  Failure to accommodate under the Washington Law Against Discrimination
            ("WLAD"), RCW 49.60.180;
13      3.  Disability discrimination under the ADA;
        4.  Disability discrimination under the WLAD;
14      5.  Retaliation under the ADA;
        6.  Retaliation under the WLAD;
15      7.  Outrage (also known as intentional infliction of emotional distress);
        8.  Negligent Infliction of Emotional Distress;
16      9.  Fraudulent Inducement;
        10. Intentional Interference with a Business Relationship;
17      11. Loss of Consortium

18      Plaintiffs move for summary judgment on three claims: failure to accommodate under the

19  ADA; failure to accommodate under the WLAD; and intentional interference with a business

20  relationship.

21      The Court will discuss Defendant's motion for summary judgment first.

22              **II.    DISCUSSION**

23  **A. SUMMARY JUDGMENT STANDARD**

24

ORDER GRANTING, IN PART, DEFENDANT'S MOTION FOR SUMMARY JUDGMENT AND DENYING
PLAINTIFFS' MOTION FOR SUMMARY JUDGMENT - 4

1    Summary judgment is proper only if the pleadings, the discovery and disclosure materials

2    on file, and any affidavits show that there is no genuine issue as to any material fact and that the

3    movant is entitled to judgment as a matter of law.  Fed. R. Civ. P. 56(a). The moving party is

4    entitled to judgment as a matter of law when the nonmoving party fails to make a sufficient

5    showing on an essential element of a claim on which the nonmoving party has the burden of

6    proof.  *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1985).  There is no genuine issue of fact for

7    trial where the record, taken as a whole, could not lead a rational trier of fact to find for the

8    nonmoving party.  *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986)

9    (nonmoving party must present specific, significant probative evidence, not simply "some

10   metaphysical doubt.").  Conversely, a genuine dispute over a material fact exists if there is

11   sufficient evidence supporting the claimed factual dispute, requiring a judge or jury to resolve

12   the differing versions of the truth.  *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 253 (1986);

13   *T.W. Elec. Service Inc. v. Pacific Elec. Contractors Ass'n*, 809 F.2d 626, 630 (9th Cir. 1987).

14   The determination of the existence of a material fact is often a close question.  The court

15   must consider the substantive evidentiary burden that the nonmoving party must meet at trial –

16   e.g., a preponderance of the evidence in most civil cases.  *Anderson*, 477 U.S. at 254, T.W. *Elect.*

17   *Service Inc.*, 809 F.2d at 630.  The court must resolve any factual issues of controversy in favor

18   of the nonmoving party only when the facts specifically attested by that party contradict facts

19   specifically attested by the moving party.  The nonmoving party may not merely state that it will

20   discredit the moving party's evidence at trial, in the hopes that evidence can be developed at trial

21   to support the claim.  *T.W. Elec.*, 809 F.2d at 630.  Conclusory, non-specific statements in

22   affidavits are not sufficient, and "missing facts" will not be "presumed."  *Lujan v. National*

23   *Wildlife Fed'n*, 497 U.S. 871, 888-89 (1990).

24

ORDER GRANTING, IN PART, DEFENDANT'S MOTION FOR SUMMARY JUDGMENT AND DENYING
PLAINTIFFS' MOTION FOR SUMMARY JUDGMENT - 5

1

**B.  DEFENDANT'S MOTION FOR SUMMARY JUDGMENT**

2

**1.  FAILURE TO ACCOMMODATE UNDER ADA AND WLAD**

3

"Judicial interpretations of the ADA and the WLAD differ slightly in the way they phrase

4

the elements of an accommodation claim under the two statutes, but the basic requirements are

5

essentially the same.  Both statutes require the plaintiff to show that (1) she is disabled; (2) she is

6

qualified for the job in question and capable of performing it with reasonable accommodation;

7

(3) the employer had notice of her disability; and (4) the employer failed to reasonably

8

accommodate her disability."  *McDaniels v. Grp. Health Co-op.*, 57 F. Supp. 3d 1300, 1314

9

(W.D. Wash. 2014) (citing *Samper v. Providence St. Vincent Med. Cntr.*, 675 F.3d 1233, 1237

10

(9th Cir. 2012); *Zickovic v. S. Cal. Edison Co.*, 302 F.3d 1080, 1088–89 (9th Cir. 2002); *Davis v.*

11

*Microsoft Corp.*, 149 Wn.2d 521, 530–31 (2003)).

12

It is undisputed that Ms. Reed is disabled and that the City had notice of her disability.

13

Under both the ADA and the WLAD, notice of an employee's disability triggers the continuing

14

duty to engage in an interactive process and for the employer to provide reasonable

15

accommodation.  *Humphrey v. Mem'l Hosp. Ass'n*, 239 F.3d 1128, 1137–38 (9th Cir. 2001); *see*

16

*Frisino v. Seattle Sch. Dist. No. 1*, 160 Wn. App. 765, 783 (2011).  "Neither the ADA nor the

17

WLAD requires an employer 'to offer the employee the precise accommodation he or she

18

requests.' The employer need only provide enough accommodation to enable the employee to

19

perform the essential functions of [her] job."  *McDaniels*, 57 F. Supp. 3d at 1314 (internal

20

citations omitted); *see Frisino*, 160 Wn. App. at 777–78 ("A reasonable accommodation must

21

allow the employee to work in the environment and perform the essential functions of her job

22

without substantially limiting symptoms."); *US Airways v. Barnett*, 535 U.S. 391, 401–02 (2002)

23

(reasonable accommodation is reasonable on its face and does not place undue hardship on the

24

1  employer).  Accommodation is not reasonable if it is obviously insufficient.  *See McDaniels*, 57

2  F. Supp. 3d at 1314; *Riehl v. Foodmaker, Inc.*, 152 Wn.2d 138, 148 (2004).

3          There are genuine issues of material fact about whether Ms. Reed would have been

4  qualified for her role with reasonable accommodation and whether her accommodation was

5  reasonable.  There is no question that the City knew Ms. Reed had a disability and began the

6  interactive process.  Dkt. 84 at 12–13.  Ms. Reed also unquestionably accepted the City's offer

7  even though it denied her specific request to telework.  *Id.*  Even if her accommodation was

8  reasonable at first, however, the City knew Ms. Reed continued to struggle in her role, that she

9  had to increase her medication doses to manage her increasing pain, and that she had to stay

10  home at times because of pain and exhaustion.  Dkt. 105 at 6–7.  This knowledge raises

11  questions of fact about whether the City knew or obviously should have known that Ms. Reed's

12  accommodation was unworkable, causing her excessive pain, and was, therefore, unreasonable.

13          Though Ms. Reed admits that she struggled during the EFSEC hearing and that it was

14  physically taxing, there is sufficient evidence from which a jury could find she would have been

15  qualified with further accommodation.  Even if, as Ms. Reed's doctor testified, she would be

16  unable to be in court five days per week without accommodation, Ms. Reed may have been able

17  to with reasonable accommodation.

18          Defendant's motion for summary judgment on the claim of failure to accommodate under

19  both the ADA and the WLAD should be denied.

20          **2.  DISCRIMINATION AND RETALIATION UNDER ADA AND WLAD**

21          The burden-shifting framework outlined in *McDonnell Douglas Corp. v. Green*, 411 U.S.

22  792, 802–04 (1973), governs both discrimination and retaliation claims under the ADA and the

23  WLAD.  *Erickson v. Biogen, Inc.*, 417 F. Supp. 3d 1369, 1378 (W.D. Wash. 2019).  Under this

24

ORDER GRANTING, IN PART, DEFENDANT'S MOTION FOR SUMMARY JUDGMENT AND DENYING
PLAINTIFFS' MOTION FOR SUMMARY JUDGMENT - 7

framework, the plaintiff must establish a *prima facie* case of discrimination or retaliation. *Curley v. City of N. Las Vegas*, 772 F.3d 629, 632 (9th Cir. 2014). If she succeeds, "[t]he burden then shifts to the employer to provide a legitimate, nondiscriminatory (or nonretaliatory) reason for the adverse employment action." *Id.* "If the employer does so, then the burden shifts back to the employee to prove that the reason given by the employer was pretextual." *Id.* Despite the burden-shifting framework, the ultimate burden of persuasion remains with the plaintiff to show that the defendant intentionally discriminated or retaliated against the plaintiff. *See Reeves v. Sanderson Plumbing Prods., Inc.*, 530 U.S. 133, 143 (2000); *Villiarimo v. Aloha Island Air, Inc.* 281 F.3d 1054, 1065–66 (9th Cir. 2002).

The Court need not determine whether Ms. Reed makes a *prima facie* case for either discrimination or retaliation because, assuming she has, she fails to raise a genuine issue of material fact as to pretext or, ultimately, intent. *See id; Curley*, 772 F.3d at 632–33 (assuming plaintiff made a *prima facie* case of discrimination and retaliation and dismissing claims for failure to show pretext).

The ADA and the WLAD use somewhat different standards to show pretext, though both consider the same basic principles. Under the ADA, "a plaintiff may establish pretext in two ways: (1) indirectly by showing that the employer's proffered explanation is 'unworthy of credence' because it is internally inconsistent or otherwise not believable, or (2) directly, by showing that unlawful discrimination [or retaliation] more likely motivated the employer." *Chuang v. Univ. of Cal. Davis, Bd. of Trustees*, 225 F.3d 1115, 1127 (9th Cir. 2000) (discrimination); *Kaiser v. Trace, Inc.*, 72 F. Supp. 3d 1126, 1137 (2014) (retaliation). Under the WLAD, a plaintiff establishes pretext by showing that the defendant's articulated reasons for the adverse action (1) had no basis in fact, (2) were not really motivating factors for its decision, (3)

1   were not temporally connected to the adverse employment action, or (4) were not motivating

2   factors in employment decisions for other employees in the same circumstances.  *See Scrivener

3   v. Clark College*, 181 Wn.2d 439, 447 (2014).  A plaintiff bringing a claim under the WLAD

4   may also defeat summary judgment by showing that although the employer's stated reason is

5   legitimate, discrimination nevertheless was a substantial factor motivating the employer." *Id.* at

6   441–42.  Both standards compel dismissal of these claims in this case, as discussed below.

7                                a. DISCRIMINATION

8          Ms. Reed acknowledges that her work had deficiencies.  Dkt. 105 at 15–16.  She argues,

9   however, that the City's criticism of her poor job performance, which culminated in a PIP, was

10  nonetheless discriminatory because the City's failure to accommodate her disability caused her

11  performance issues, both by increasing her pain and by requiring her to take more medication,

12  which caused cognitive side effects.[1]  *Id.*  The City, however, has a nondiscriminatory interest in

13  giving feedback on performance deficiencies to correct those deficiencies.  There is no evidence,

14  direct or indirect, that the City knew Ms. Reed's medication was causing negative side effects

15  and nonetheless punished her for them, that it's criticism of her work was unjustly harsh, or of

16  internal communications or logical inconsistencies to suggest that discriminatory intent was its

17  true motivation.

18         For the reasons stated above, Ms. Reed fails to show a genuine issue of material fact, and

19  Defendant's motion for summary judgment on the issue of discrimination under both the ADA

20  and the WLAD should be granted.

21                                b.  RETALIATION

22         As with Ms. Reed's claim for discrimination, she alleges that criticizing her work

23

24  _____
    [1] Ms. Reed does not assert her ultimate termination as an adverse employment action at issue here. *See* Dkt. 105.

1  performance and ultimately issuing a PIP were adverse employment actions intended to retaliate

2  against her for requesting accommodation.  In addition, she claims assigning her to draft the

3  entire final EFSEC brief, as opposed to just one section, was retaliation for telling her supervisor

4  that she needed to keep her hours at 40 per week for health reasons.  Dkt. 105 at 16–17.  The

5  City, however, had a legitimate interest in giving performance related feedback and in assigning

6  work on a brief.  *See* Dkt. 74 at 20–21.  Though the timing of the brief assignment was closely

7  related to Ms. Reed's request to work fewer hours, it was also related to the needs of the case.

8  There is no evidence, direct or indirect, that her performance reviews or the brief assignment

9  were intended to retaliate against, punish, or dissuade her or anyone else from making an

10  accommodation request.

11       Therefore, Defendant's motion for summary judgment on the issue of retaliation under

12  both the ADA and the WLAD should be granted

13      **3.  OUTRAGE**

14       The elements of outrage are "(1) extreme and outrageous conduct; (2) intentional or

15  reckless infliction of emotional distress; and (3) severe emotional distress on the part of the

16  plaintiff."  *Reid v. Pierce Cnty.*, 136 Wn.2d 195, 202 (1998).  To be extreme and outrageous,

17  conduct must be "so outrageous in character, and so extreme in degree, as to go beyond all

18  possible bounds of decency, and to be regarded as atrocious, and utterly intolerable in a civilized

19  community."  *Grimsby v. Samson*, 85 Wn.2d 52, 29 (1975) (internal citation omitted).

20       "Mere insults and indignities, such as causing embarrassment or humiliation, will not

21  support imposition of liability on a claim of outrage."  *Armijo v. Yakima HMA, LLC*, 868 F.

22  Supp. 2d 1129, 1136 (E.D. Wash. 2012).  Instead, a "recitation of the facts to an average member

23

24

ORDER GRANTING, IN PART, DEFENDANT'S MOTION FOR SUMMARY JUDGMENT AND DENYING
PLAINTIFFS' MOTION FOR SUMMARY JUDGMENT - 10

of the community would arouse his resentment against the actor and lead him to exclaim 'Outrageous!'" *Reid*, 136 Wn.2d at 201–02.

There is no evidence the City's conduct was "outrageous." Ms. Reed acknowledges that the feedback she received on her work was valid, not even "mere insults or indignities," and the City did not so obviously ignore or exacerbate her symptoms as to go beyond all possible bounds of decency.

Defendant's motion for summary judgment on the claim of outrage should be granted.

### 4. NEGLIGENT INFLICTION OF EMOTIONAL DISTRESS

As with all negligence claims, a plaintiff must show duty, breach, causation, and injury to succeed in a claim of negligent infliction of emotional distress. *Kumar v. Gate Gourmet Inc.*, 180 Wn.2d 481, 505 (2014). The existence of a duty is a question of law, and it only extends to "those who are *foreseeably* endangered by the conduct and only with respect to those risks or hazards whose likelihood made the conduct unreasonably dangerous." *Strong v. Terrell*, 147 Wn. App. 376, 387 (2008). The existence of a duty "necessarily involves a foreseeable risk, a threatened danger of injury, and conduct unreasonable to the proportion to the danger." *Id.* at 388 (internal quotation omitted).

In addition to the familiar elements of a negligence claim, a plaintiff bringing a negligent infliction of emotional distress claim must demonstrate objective symptomology of emotional distress, *Strong*, 147 Wn. App. at 387, and that "the dominant feature of the negligence claim was the emotional injury," *Snyder v. Medical Serv. Corp.*, 98 Wn. App. 315, 323 (1999).

Ms. Reed does not offer evidence that the City foreseeably caused her objective symptomology of emotional distress. Ms. Reed and her supervisors regularly communicated about her pain and how to improve her work performance. Dkt. 84 at 6. Ms. Reed acknowledges that her supervisors were "fair, but exacting." Dkt. 74 at 21–22. Though Ms.

1   Reed suffers from ongoing pain and may now exhibit objective symptomology of emotional

2   distress, there is no evidence that unreasonably dangerous actions by the City foreseeably caused

3   her emotional distress.  While it is possible to infer that actions by the City exacerbated Ms.

4   Reed's physical injuries, her deteriorating physical health would be the dominant and intervening

5   cause of any emotional distress traceable to her employment.

6        Defendant's motion for summary judgment on the issue of negligent infliction of

7   emotional distress should be granted.

8   **5.   FRAUDULENT INDUCEMENT**

9        Under Washington law, a plaintiff must establish nine elements of a fraudulent

10  inducement claim by clear, cogent, and convincing evidence.  The nine elements are:

11       (1) a representation of existing fact, (2) its materiality, (3) its falsity, (4) the speaker's
         knowledge of its falsity, (5) the speaker's intent that it be acted upon by the person to whom
12       it is made, (6) the right to rely upon it, and (9) consequent damage.

13  *Elcon Constr., Inc.*, *v. E. Wash. Univ.*, 174 Wn.2d 157, 166 (2012).  A fraudulent inducement

14  claim fails if the plaintiff fails to demonstrate any one of these nine elements. *Frontier Bank v.*

15  *Bingo Invs., LLC*, 191 Wn. App. 43, 59 (2015).

16       Ms. Reed cannot demonstrate either knowledge of falsity or intent.  She alleges that the

17  City fraudulently failed to inform her that she would not be able to telework 50% of the time, as

18  she requested.  Dkt. 105 at 23.  The City, however, informed her that she would need to make a

19  formal request with HR, which would work with her regarding her accommodation.  *Id.*  None of

20  the evidence suggests that anyone at the City indicated that teleworking would be possible or

21  *knew* it would not be possible.  Without evidence of knowledge of falsity, Ms. Reed also cannot

22  demonstrate intent to rely on a false statement.

23       Defendant's motion for summary judgment on this issue should be granted, and

24  Plaintiffs' fraudulent inducement claim should be dismissed.

ORDER GRANTING, IN PART, DEFENDANT'S MOTION FOR SUMMARY JUDGMENT AND DENYING
PLAINTIFFS' MOTION FOR SUMMARY JUDGMENT - 12

### 6.   INTENTIONAL INTERFERENCE WITH A BUSINESS RELATIONSHIP

"[A] cause of action for tortious interference arises from either the defendant's pursuit of an improper objective of harming the plaintiff or the use of wrongful means that in fact cause the injury to plaintiff's contractual or business relationships." *Pleas v. City of Seattle*, 112 Wn.2d 794, 804 (1989).  Under Washington law, this requires a plaintiff to produce evidence of the following five elements:

> (1) the existence of a valid contractual relationship or business expectancy; (2) the defendant's knowledge of an intentional interference with that relationship or expectancy; (3) a breach or termination of that relationship or expectancy induced or caused by the interference; (4) an improper purpose or the use of improper means by the defendant that caused the interference; and (5) resultant damage.

*Tamosaitis v. Bechtel Nat'l, Inc.*, 182 Wn. App. 241, 249 (2014).  "Interference can be 'wrongful' by reason of a statute or other regulation, or a recognized rule of common law, or an established standard of trade of profession."  *Pleas*, 112 Wn.2d at 804.

Ms. Reed does not provide any evidence of improper motive or means.  There is no evidence that the City intended to harm her or that it had a duty, by statute, common law, trade standard, or otherwise, to tell her what accommodation it would provide before she resigned from her previous employment.

Therefore, Ms. Reed fails to create a genuine issue of material fact, and Defendant's motion for summary judgment on her claim of intentional interference with a business relationship should be granted.

### 7.   LOSS OF CONSORTIUM

Defendant argues that Mr. Reed may not bring a claim for loss of consortium either because all of Ms. Reed's claims should be dismissed, or because any surviving claims are preempted by the Washington Industrial Insurance Act ("WIIA").  Dkt. 74 at 25.

1    "Damages for loss of consortium are proper when a spouse suffers loss of love, society,

2    care, services, and assistance due to a tort committed against the impaired spouse." *Burchfiel v.*

3    *Boeing Corp.*, 149 Wn. App 468, 494 (2009).  Whether a husband may bring a claim for loss of

4    consortium depends on whether the injured wife has a legal remedy for her injury.  *See Francom*

5    *v. Costco Wholesale Corp.*, 98 Wn. App. 845, 870 (2000).  Therefore, a husband may not bring a

6    claim for loss of consortium if the injured wife's employer is immune, for example by a statute

7    like the WIIA, which bars civil recovery for most injuries sustained in the course of employment.

8    *See Flanigan v. Dep't of Labor and Indus.*, 123 Wn.2d 418, 422–23 (1994).  Claims brought

9    under the WLAD, however, are not barred by the WIIA because "the [WIIA] compensates an

10   employee for their 'workplace physical injury' whereas the WLAD compensates an employee

11   for the 'subsequent injury arising from their employers' alleged disability discrimination.'"

12   *Wash. v. Matheson Flight Extenders, Inc.*, 440 F. Supp. 3d 1201, 1220 (W.D. Wash. 2020);

13   *Goodman v. Boeing Co.*, 127 Wn.2d 401, 402 (1995).  By the same logic, the WIIA does not bar

14   recovery for claims brought under the ADA.  *See id.*

15         Mr. Reed's claim for loss of consortium may proceed because Ms. Reed has two

16   surviving claims of discrimination: failure to accommodate under the WLAD and the ADA.

17   Neither claim is barred by the WIIA, and Mr. Reed properly alleges loss of love, society, care,

18   services, and assistance caused by the City's actions toward Ms. Reed.

19         Defendant's motion for summary judgment on the issue of loss of consortium should be

20   denied.

21   **C.  PLAINTIFFS' MOTION FOR SUMMARY JUDGMENT**

22         Ms. Reed moves for summary judgment on her ADA and WLAD claims of failure to

23   accommodate and on her claim of intentional interference with a business relationship.  Her

24

ORDER GRANTING, IN PART, DEFENDANT'S MOTION FOR SUMMARY JUDGMENT AND DENYING
PLAINTIFFS' MOTION FOR SUMMARY JUDGMENT - 14

1    motion for summary judgment should be denied.

2        **1.  FAILURE TO ACCOMMODATE**

3        As previously discussed, genuine issues of material fact preclude summary judgment on

4    Ms. Reed's claims of failure to accommodate.  While the Parties agree that she is disabled,

5    deciding whether Ms. Reed would have been qualified for her position with reasonable

6    accommodation, whether the City had notice of her need for additional accommodation, and

7    whether the City's accommodation was reasonable requires determinations of fact.

8        Ms. Reed's motion for summary judgment on this issue should be denied.

9        **2.  INTENTIONAL INTERFERENCE WITH A BUSINESS RELATIONSHIP**

10       The Court previously granted Defendant's motion for summary judgment on this issue.

11   Ms. Reed's motion should be denied and her claim for intentional interference with a business

12   relationship should be dismissed because she fails to demonstrate a genuine issue of material fact

13   of improper means or motive.

14                            **III.   ORDER**

15   Therefore, it is hereby **ORDERED** that:

16       • Defendant's Motion for Summary Judgment (Dkt. 74) **IS GRANTED, IN PART,**

17           **AND DENIED, IN PART**:

18           ○ The motion is denied as to Plaintiffs' claims of failure to accommodate

19               under the ADA and the WLAD and loss of consortium, and the motion is

20               granted as to all other claims, which are hereby dismissed;

21       • Plaintiffs' Motion for Summary Judgment (Dkt. 84) **IS DENIED**;

22       The Clerk is directed to send uncertified copies of this Order to all counsel of record and

23   to any party appearing pro se at said party's last known address.

24

1   Dated this 8th day of March, 2021.

2

3   ROBERT J. BRYAN
    United States District Judge
4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24